## Paul et al. v. Grubbs et al.

*Injunction—Plan of lots—Boroughs—Public thoroughfares—Private roads —Adjoining owners.*

The words "I hereby adopt this plan of lots as my own," noted by the owner of the land on the recorded plan of lots in the office of the recorder of deeds do not amount to a dedication to public use of a street shown in the plan. Hence, persons who do not own property on the plan are not entitled to use the street as a means of ingress and egress to their property.

In equity. C. P. Allegheny Co., April T., 1922, No. 1179.

*John M. Reed,* for plaintiffs; *Shoemaker & Knoell,* for defendants.

STONE, J., June 9, 1922.—The question in issue in this case is as to whether or not a certain strip of land, 50 feet in width and approximately 300 feet in length, is a private road or public thoroughfare.

From the pleadings and evidence taken in the case we make the following findings of fact and conclusions of law:

### Findings of fact.

1. By deed dated Nov. 15, 1881, Jacob Paul and wife conveyed to their son, Harry S. Paul, a certain tract of land, situate in the then Borough of Verona, now the Borough of Oakmont, and the property thus conveyed, or at least part of it, was included in a plan of lots laid out by Harry S. Paul and adopted by him on July 7, 1882, which plan was duly recorded in the office of the Recorder of Deeds of Allegheny County on Sept. 22, 1882, in Plan Book, volume 6, page 288.

2. In the plan adopted by Harry S. Paul, he did not dedicate any part of his land to public use. He said nothing more than this: "I hereby adopt this plan of lots as my own. H. S. PAUL."

3. The property in the plan had a frontage of 349 feet along what was then Railroad Avenue, now Oakmont Avenue. This frontage was divided into two lots of 174 50/100 feet each. The title to one of which, at the corner of Oakmont Avenue and "E" Street, now Pennsylvania Avenue, is now vested in Jennie L. Paul, wife of Harry S. Paul, and the other lot is owned by Margaret McClintock Brown, Josephine W. Kerr, Alexander McClintock Brown and William C. Brown, Jr.

4. Immediately in the rear of the Paul and Brown tracts there appear on the Paul plan an unnamed street, 50 feet in width, which extends from "E" Street, now Pennsylvania Avenue, in a southerly direction 317.60 feet.

5. The property, according to the Paul plan, on the other side of the 50-foot street referred to, is divided into eleven lots, and the title to lots numbered 1, 2, 3 and 4 is vested in Laura F. Moyer, while the title to lots numbered 5, 6, 7, 8, 9, 10 and 11 is vested in Elizabeth Westerman.

6. In the conveyance from Jacob W. Paul and wife to Harry S. Paul the 50-foot street is referred to in this language: "Also allowing for a street

50 feet wide and two streets or alleys, each 34 feet wide, and the strip along the dividing line between said purparts 8 and 9 intended as a contribution for a street between the said purparts. All of said streets being now either laid out—or proposed to be laid out—on the land included within the boundaries above given. . . ."

7. By deed dated Feb. 19, 1921, and recorded in the Recorder's Office of Allegheny County, Pennsylvania, in Deed Book, volume 2116, page 156, the defendants, Orlando S. Grubbs and Parker W. Grubbs, obtained title to a tract of land adjoining the Paul plan on the south, and also the Brown and Westerman tracts, previously herein referred to.

8. At the southerly end of the 50-foot street, which terminated at the southerly line of the Brown tract and its prolongation through the Westerman tract, there was an abrupt drop or declivity of approximately 10 feet to the property now owned by the defendants.

9. From approximately 1881 until October, 1921, there was a fence, either paling, iron or other kind, but practically at all times a fence, at the extreme southerly end of the 50-foot street, previously herein referred to, and which divided the street from the property now owned by the defendants.

10. On his 50-foot street, and within a very few feet of its southern terminus, trees have grown and are now quite large, and they are parallel with the fence previously referred to.

11. Part of the unnamed street, especially the southern half thereof, has been used for gardens, and at one time, for a period of about ten years, there was a tennis court constructed upon it.

12. Electric light poles, a sewer and a water line are on the street as a result of special privilege and grants executed by the abutting property owners, excluding the defendants and their predecessors in title.

13. Sewer and water lines are laid in the street for the special benefit of abutting property holders in the Paul plan, and the costs and expenses of construction were invariably paid by such beneficiaries.

14. In charging a pole tax to public service corporations for the poles constructed by them in the Borough of Oakmont, the poles constructed on this 50-foot street have never been counted, and no tax has ever been charged by the borough or paid by such public service corporation.

15. Until the organization of the Borough of Oakmont this property was in the Borough of Verona. Neither borough at any time ever claimed or exercised any jurisdiction or control over the 50-foot street in question as a public highway; but, on the contrary, at all times acknowledged and conceded that it was a private street and to be used and enjoyed solely by the plaintiffs or their predecessors in title.

16. The 50-foot street in question has never been used by the predecessors in title to the tract of land now owned by the defendants; the 50-foot street being used at all times and solely by the parties plaintiff to the bill or their predecessors in title.

17. Not until the defendants attempted to haul building material over the 50-foot street in question has there been any claim of right to use it as a public highway by any one.

### Conclusions of law.

1. The 50-foot street immediately in the rear of the Paul and Brown tracts is a private thoroughfare.

2. The defendants, not being the owners of property in the H. S. Paul plan, are not entitled to use the 50-foot street in the rear of the Paul and Brown

tracts as a means of ingress and egress to their property, which begins at the extreme southerly terminus of the street.

3. That the defendants be perpetually enjoined from using the 50-foot street immediately in the rear of the Paul and Brown tracts as a means to and from their own property.

4. That the defendants pay the costs.

## *Discussion.*

For something over forty years the owners of the title to the land which is now vested in the defendants recognized and conceded the 50-foot street which is now the subject-matter of the controversy to be a private thoroughfare.

Mr. Paul, in his acceptance of the plan, did not dedicate any street as a public thoroughfare. The sale of lots out of the plan would, of course, without the consent of such purchasers, prevent Mr. Paul from changing located streets, and while it may be conceded that the sale of lots committed Mr. Paul to the plan, something additional had to be done by the municipality in order that highways located in a plan may be considered, treated and actually become public thoroughfares. The record in this case is absolutely lacking in any evidence from which it might be conceded that this 50-foot street is a public thoroughfare. True it is, the borough constructed a sewer on this street. This was done at the request of the abutting property holders and paid for by them, and became necessary by reason of the fact that the grades are such that the owners of lots one to eleven could not dispose of their sewage in a satisfactory manner into the sewer on Fourth Street; hence, a sewer constructed on this 50-foot street, which runs only part way through the street, was very feasible and was for the benefit only of the abutting property holders. In a proceeding before the Borough Council of Oakmont, in which the council was asked to vacate this 50-foot street, the answer was, "No;" and apparently for the reason that it at all times has been a private thoroughfare. Theoretically at least, the lot owners in the plan have an easement over this 50-foot street, but such an easement means nothing to them as a practical matter, unless their properties abut on the street. The defendants do not own any of the lots in the plan, and, even if they did, it may be seriously questioned as to whether or not such ownership would give them any rights, so far as the property at the southerly end of the street in question is concerned.

Originally there was an abrupt ten or more foot drop at the southerly end of this street. This drop continued practically in its original state until the purchase made by the defendants in February of 1921. After that purchase, the defendants filled in ground, so that the declivity is no longer present.

Until the borough should actually take possession of this street and make it a public thoroughfare—which act it has always refused to do—the defendants can have no standing to claim the right to use this street as a public thoroughfare. When laid out, it certainly was for the benefit of the owners of lots in the plan. True it is that most of the other streets, if not all of them, as laid out in the plan, have formally been taken over by the municipality. Many of them have been paved and other overt acts have been committed as evidence of public ownership. To place this street on the borough plan does not make it a public thoroughfare, and may be considered amounting to nothing more than a location. It would not even amount to that unless there was some legislative act to that end.

This case does not present a claim of the municipality, as such, that this is a public thoroughfare, but is simply a claim of individuals purchasing prop-

2 D. & C.

erty a little over a year ago that this street is a public thoroughfare. Even if the borough had been such a claimant, it may be seriously questioned as to whether or not its rights have not been lost by reason of the provisions of the Act of May 9, 1889, P. L. 173.

Surely the rights of the defendants, however, rise no higher than the rights of a municipality. The municipality has never claimed this to be a public thoroughfare, but, on the contrary, has at all times treated it as a private street. Mr. Paul, who laid out this plan of lots, so far as the evidence in the case is concerned, did not own the tract or any part of it now owned by the defendants.

We are of the opinion that, no matter from what angle you consider the status of the street in question, the defendants have no rights over, in or upon it, and as we have so found in our findings of fact and conclusions of law.

From Edwin L. Mattern, Pittsburgh, Pa.